All rise. Please be seated. Madam Clerk, please call the case. Case No. 315-0434 consolidated with 315-0451 and 315-0461. T2 Holdings, LLC, appellant cross-appellant by Matthew Heumann, and Windy City Promotions, LLC, appellate by Lawrence Bollman, v. Illinois Gaming Board, appellate cross-appellant by Heather Siegel. Time's up, right? Yep. Ready to proceed? All right. May it please the Court, Counsel, my name is Matthew Mueller. I represent the appellant, Peer 2. We are the appellant in regards to one issue, the publication of the LEPs document, or the, I call it in my brief, the advisory opinion, by the Illinois Gaming Board. We are the appellee in regards to the issue of the seizure of the kiosks from the Get Fit in Morris by the Illinois Gaming Board. This case is a case about an administrative agency that is overstepping the bounds of its power and authority as established by the legislature. Specifically, in regards to the publication of the, I'll call it the LEPs document, as long as we all know what I'm talking about here, or the advisory opinion, the trial court should be reversed. And specifically, the trial court's ruling was that it was not convinced that the court has the authority to enjoin the IGB from making policy statements and interpretations on its website. The trial court made no finding as to whether or not the IGB actually exceeded the bounds of its authority. And I think the case law seems fairly clear, and the case that I had stated in my brief is People's Energy. And it stands for the proposition that if an administrative agency exceeds the bounds of its authority, that is a proper time for a trial court to use its injunctive power. So I think the court simply erred when it said that it didn't think it had the authority to actually enjoin the IGB. The case law supports the fact that they certainly do, which leaves this court in the position where it could be remanded to the trial court. But because of the nature of where we're at in this proceeding, this court could certainly also decide whether or not the publication of the LEPs document did actually exceed the authority of the Illinois Gaming Board. And it's been admitted in the Illinois Gaming Board's pleadings in the lower court. It is an administrative agency. We all know that. And as an administrative agency, its power comes from the statute that enables it. And the way that courts typically look at that power is, is it expressly stated in the statute? The act that they're doing, are they expressly allowed to do that within the statute? And if it's not expressly stated within the statute, then under those circumstances is it an implied power, something that obviously the legislature intended for them to have the power to be able to do. And in regards to this situation, neither the express or the implied power saves the Illinois Gaming Board from the publication of that LEPs document. The Illinois Gaming Board, the relevant statute for what is the authority of the Illinois Gaming Board, at least under the VGA, would be under 230 ILCS 40-78. And if you look through that statute, there's no express power or authority that allows them to be able to publish these types of legal opinions that interpret the entire criminal code, not just the small portion of it that specifically relates to the Illinois Gaming Board. And that's really the gist of what our entire argument is and why there's also not implied authority. Because we're not disputing that if the Illinois Gaming Board wanted to say, we will not license these if they take the necessary steps to make that a rule, if they say that, that's clearly within their implied authority, there's no doubt. But the LEPs document goes dramatically further than that. In fact, nearly two paragraphs of the LEPs document is talking about how it's in violation of the criminal code, these kiosks that we're talking about. And therein lies the problem, because the document actually says it's the opinion of the IGB that electronic product promotion sweepstakes, kiosks, fit the definition of gambling device. Gambling device is something that's established in the criminal code and it's actually the section directly after the definition of gambling. And gambling has, I think, 14 different exceptions that pull out criminality from the code. And some of them are the lottery, bingo, the VGA, the Video Gaming Act, the Riverboat Gambling Act, games of skill and chance where no purchase is necessary. There's 14 total. And under these circumstances, it's a pure two's position that this does fall within one of those exceptions. However, if we're looking at gambling, I said this in my brief so I hate to be repetitive, but if we're looking at gambling as an apple, the VGA is one slice of that total apple. And when you look at this document here, it has a tendency to say, hey, it's illegal under the whole apple. It's just outright illegal. And that's why it's beyond the scope of the authority of what was allowed to be stated by the IGB. And if we're looking at the, there's another problem for the IGB too, which is if we're looking at, even if we assume that they could have had this authority, there's questions about whether or not they appropriately exercised that authority using their rulemaking power. And the record here, I will admit, is not crystal clear on the issue. It was argued by Pier 2 and Windy City that they did not, they being the Illinois Gaming Board, did not follow the proper rules and it was never responded to, it appears to me, in the transcripts. There was no response by the Illinois Gaming Board. So I think it's clear enough that they didn't follow the rules that this court can rule on it, but if the court ultimately gets that far down on the argument line, then under those circumstances, it certainly has the ability to remand or it has the ability to be able to decide, this court has the ability to be able to decide for itself. And then the issue raised by the Illinois Gaming Board in their brief was this question about whether or not this issue has become moot. And Pier 2 agrees that as it's currently situated, at least last time I checked, the WEFS document was down from the Illinois Gaming Board's website. In terms of a timeline, though, what we're talking about here is this case was decided in 2015. I believe my brief was filed in November of 2015. I believe that the Illinois Gaming Board asked for a couple of extensions and then in February of 2016, possibly after they saw my brief, this document came down from the website and a mootness doctrine was put before the court. And as a mootness doctrine was put before the court, my response is, well, yes, it's not down, but they're mailing it. So I attach an affidavit. We're both asking that this court take judicial notice of things that are outside of the record. If you take only the IGB's judicial notice and not my judicial notice, which is the worst possible case scenario for Pier 2, it still isn't moot, though, because of the two general exceptions to the mootness doctrine, I apologize. The first exception is it's a public interest exception. And I won't go into a lot of detail about that because the real clear exception is it's a situation capable of recurring. And here we have that in spades simply because of the fact that obviously the IGB controls its website. If this court were to say we're not going to rule on this because of mootness, it could be back on the website tomorrow. And we, as Pier 2, would be in this uncomfortable situation where we have a trial court ruling and then an appellate court ruling. I don't even know how we'd address it, quite frankly. I haven't had to think about it. But clearly, based on those two principles, where we're at here today, this is not moot. This is a relevant issue. The second issue before the court is also an overreach of the powers given to the IGB. And that is that the IGB officers were the ones that came in and seized these kiosks. And this is mostly statutory interpretation that we're talking about here. But under these circumstances, we have a 230 IOCS 40-35. And it says if there's a seizure of gambling devices, something that the LEPs document claims these kiosks are, it needs to comply with Section 28-5 of the Criminal Code. Section 28-5 of the Criminal Code says that these devices under the gambling laws that are subject to seizure or confiscation are subject to, by the Illinois State Police, a municipal or local authority within the jurisdiction. So it's telling us that we've got to have law enforcement if this type of seizure is going to happen. Now, the statute does get a little bit more convoluted when you look at the fact that under the VGA, the IGB, sorry for the acronyms, they are able to hire investigators. And those investigators do have some seizure power. There's no doubt that they have some seizure power. But when you're talking about seizures because it's a gambling device or because you believe it's in violation of the Criminal Code, those investigators don't have that same seizure power. They are limited to enforcing the rules promulgated by the VGA. So I would suggest that the clear language of the investigator statute of the VGA is actually that if there's a tampered with machine, if there's a machine that's not properly posting the winning odds, if there's a machine that's malfunctioning, those are the types of things the investigators can oftentimes go in and seize to prevent people from playing on machines that aren't working, that are going to steal their money, that type of thing. But when you're talking about, hey, we think this is a violation of the Criminal Code, well, that's left to the Illinois State Police. And largely the IGB's response is, well, they were Illinois State Police officers. And that's not a saving clause under these circumstances because we have different procedures. There's no doubt from the record that these items were held by the VGA, that these were VGA investigators. So while they're acting as VGA investigators, they're stuck with 230 ILCS 40-79. That's their enabling provision. Yes, if the Illinois State Police separately want to come in and they want to seize these kiosks. Yes. Thank you. They can't. Of course they can't. But different rules apply. Because if the Illinois State Police come in and seize it, there's a provision that says, well, first of all, the Illinois State Police are the ones that are holding it, but also this goes to the elected official. This goes to the state's attorney's office. So the statutory construction that we're dealing with here makes complete sense that we would want the elected official to be the one that's determining how these seizures are administered over the VGA. Meanwhile, malfunctioning machines, for example, yeah, that would be within the VGA's purview. It's not directly on point, but this court ruled on a case, it's the Ringling case, which is a safe unit case that I'm sure everyone knows about. And in that case, the trooper that was there, he actually was later sworn in as a Spring Valley police officer. And this court still made the decision, well, wait a minute, the authority has to derive from the entity that you're gaining the authority from. It's not a perfect comparison, but the law is fairly meek on this specific issue. But in that case, it has to be derived from the state's attorney's office. In this case, if they are VGA investigators, regardless of whether they're also sworn Illinois State Police officers, they have to follow the rules associated with investigators as promulgated by the VGA. If they wanted to seize the devices, they should have called the Illinois State Police, the Illinois State Police should have come in, they should have taken the items, and then, quite frankly, I'd be dealing with the Grundy County State's Attorney's Office about this instead of the procedure that we're at here. So, I think I'm probably just about out of time, if there's any questions. Thank you for the time, I appreciate it. My name is Larry Beaumont, I'm actually the one, I suppose, that started this process. I brought initial action in the circuit court for repugnant after the IGB agents seized my client's machines without what we viewed as any authority to do so. So, our position in this case, obviously, is that the trial court correctly ruled that IGB seized those machines unlawfully and that we were entitled to get those machines back, which they were indeed returned to us. We do believe that the agents of IGB exceeded the scope of the statutory authority that they had to seize these machines. This was not a licensed facility, this was not a video gaming licensed facility where they indeed can investigate, this was another business that had nothing to do with any type of gaming activity. And they simply came into this business without any type of warrant or any type of process and took the machines and said, we're taking them, basically, is what happened. So, we demanded that they be returned and they refused, and so we brought repugnant action in the circuit court. So, our position is simply that the court correctly ruled that they did indeed exceed the scope of their authority by seizing the machines, hence they seized them unlawfully and that we were entitled to get them back, unless the court has any questions about that. Thank you. Counsel, you may proceed. Good afternoon. May it please the court. Counsel and Assistant Attorney General Evan Siegel on behalf of the Illinois Gaming Board. Your Honors, I will begin our arguments this morning, this afternoon, concerning the publication of the LEPS document on the website. And then, unless the court prefers a different order, I'll turn to what I call the authority question, the authority of these three Illinois State police officers to seize the two kiosks of the plaintiffs in question. What is not in question, though, for either issue, is the legality of these types of kiosks. That issue was taken off the table by the plaintiffs voluntarily. We agreed to that, and it's a question that the circuit court never reached. For that reason, this court should not and need not address the legal status of those kiosks categorically. That's beyond the scope of this appeal. And the court should, therefore, disregard Windy City's brief, which focuses largely on that legal status question. Mr. Beaumont did not discuss that in great detail just now. But as we argued in our reply brief in footnote one, the issue is off the table. The argument is forfeited. So now I'll turn to the website question about the LEPS document. That, too, should not be decided by this court. It is moot, as counsel alluded to earlier, because the website link is no longer on the website, concerning the categorical legality of those kiosks. Since February of 2016, the court, therefore, cannot render effectual relief to Pier 2 holdings under the Supreme Court's decision in re-commitment of Hernandez, which holds that when there are intervening events, an appeal is moot when those events have rendered it impossible for the reviewing court to grant effectual relief. Now, the question is front and center in the room about the capable of repetition exception. We have not reposted that document, and we will not do so. It has never been up. It will not go up again. And there was an allusion by counsel and filings, of course, before the court about some press releases that went out by mail. That was erroneous. That was an anomaly, and that was two situations. There's nothing that stops you from putting it back up, is there? Well, we will not. We don't. I am representing to the court today that we will not put it back up again, and that is my client's position. So that's final, and that moots this issue. How is that legally binding as final? How is my representation? Well, this is our position. We have no interest in putting it up again. We have an interest in this case resolving the actual live issues that are before the court. But if the court is uncomfortable with the mootness solution and what I just told you about the capable of repetition exception, there's an additional basis for this court to – there's a second jurisdictional bar that prevents the court from addressing the website issue, and that's standing. Pier 2 Holdings lacks the standing to challenge the website issue because it voluntarily withdrew its claims concerning the legality of the kiosks. The subject of the website document, the WEPS document, is, of course, the categorical liability of the kiosks. Pier 2 Holdings cannot challenge a statement in the form of a website posting when it's not challenging the legality of the position itself. So the publication of the website had no effect on Pier 2 Holdings. Even if publication were to recur, which it will not, there is no harm to Pier 2 Holdings, which has conceded that there is no case or controversy concerning the legal status of this type of kiosk. So Pier 2 Holdings and Windy City cannot seek to import the legal status question through the back door of the website. The form of the board statement has not harmed them and it cannot harm them, and Pier 2 Holdings, therefore, has no standing to challenge the website posting. I'm going to turn now to the second question before this court, the authority issue. The three ISP agents, the three state police agents, seized two kiosks under three separate sources of authority.  I want to make clear to the court how we operate day-to-day on the ground in reality and how we employ and use investigators because our actual practices will help contextualize these statutes. About half of our investigators are board employees. Their paycheck comes from the board and we call them gaming agents. Another approximate half are detailed or tasked to the board from the Illinois State Police. They work for the board, but they're paid by the state police. And they, too, are gaming agents. And whether these gaming agents are board employees or state police employees, their powers are coterminous as investigators. They have powers. They have a broad range of powers, including the power to seize devices deemed to be unlawful or, and this is important, reasonably believed to be unlawful devices. Being an investigator, as I heard counsel explain it today and in his brief, does not mean that investigators so categorized are confined in their powers. Our investigators don't sit at desks in the Thompson Center and review paperwork and just look at computer screens lacking any power in the outside world to enforce our statutes through seizures and other acts outside of their offices. Whether they're at casinos or elsewhere, beyond the power to make seizures, which I'll talk about in a minute under those three sources, our investigators can make arrests at gambling sites. If an investigator whose paycheck comes from the board sees a fight break out at a blackjack table, he or she is authorized to make an arrest and break that fight up. That's whether they're employed by the board or the state police. So by and large, the two groups of gaming agents do everything permissible that the other group does and their responsibilities mirror each other under the Riverboat Gambling Act and the Video Gaming Act. So now let me talk about the statutory interpretation question, the three sources of the state police in this case, and again, they were state police. I don't understand counsel's suggestion earlier that if we wanted to exercise the authority of seizure, we needed to call the state police. They are the state police. The three sources are the Riverboat Gambling Act, the Video Gaming Act, and again, because they are state police officers and a sergeant, the criminal code. First, the Riverboat Gambling Act. It provides in Section 20.7 that the board can contract with state police, as I've just described, to deploy investigators who, quote, may conduct investigations, searches, seizures, arrests, and other duties. It's the full gamut. It's not just an investigation at a desk. It's actually using the results of that investigation to take action to enforce the gaming laws. If you hired somebody that was not a member of the state police or some police agency, would they have that same authority? They would, I believe so, Your Honor. The only other category that I'm aware of with whom we can contract is Department of Revenue employees. I believe, and we don't have that in this record, and my understanding is we don't have any of those agents now, but they would be peace officers. They would be able to make arrests, conduct seizures, the full gamut of authority. And there's no private contracting that I'm aware of. The second source of power is this same tasking or detailing provision of 20.7 of the Riverboat Gambling Act, and that's incorporated into the Video Gaming Act, which states in Section 79 that investigators can, quote, conduct investigations, searches, seizures, arrests, and other duties. The same exact language that I just quoted to you from the Riverboat Gambling Act. And third, because three investigators were state police officers, they derived their authority from Section 28-5A of the Criminal Code, which allows seizure, confiscation, and the destruction of unlawful gambling devices. And that includes the situation here with the two kiosks, which lacked the required license. There is a central fallacy, however, to the Circuit Court's reasoning and to the Groberman of Pier 2 Holdings' argument. It's the idea that no investigator, as I've described, can take the required legal action such as seizure unless the seized device is licensed. Nothing in the statute provides that. It also defies common sense. It's like saying that the Ottawa police can pull over only licensed drivers and not ensure the safety of the road when someone's license has expired or they don't have one, that they can issue speeding tickets only to licensed drivers. Licensure is not the issue that authority hinges on. Section 79 of the Video Gaming Act, one of the main sources of authority in this case, says nothing about limiting investigators' power to licensed devices, nor is the definition of a video gaming terminal confined only to licensed ones in 230 ILCS 40-5. If that were so, then no one in Illinois would have any incentive to ever obtain a license for a video terminal or a gaming device because they wouldn't be regulated by us. What's the point of going through our protocols and making sure the machines test to get a license if it's exempt and immune from our investigation when there's no license? In short, there are no limitations on the ability of the state police investigators to investigate and to seize devices that were not licensed. State police officers can act like state police officers. They do not stop becoming state police officers when they are tasked to the board and working in a casino or going around on tips and information, having reasonable suspicion, having warrants in other cases, or seeing in plain view devices in quasi-public spaces that do not display the proper licensure or that look, just not plugged in, sitting against the wall, like they may be a gaming machine. If agents and investigators can seize and inspect only licensed machines, there's nothing for them to do. And that's the upshot of the circuit court's injunction in this case. It absolutely incapacitates our board investigators from doing their duty. So by seizing these kiosks, the investigators did their job. They fulfilled their duties and their function, and they carried out their responsibilities lawfully. The circuit court failed to recognize that. So if there are no questions at this point, I will be back. But the board asks the court to reverse the circuit court's determination on the power of the investigator to reverse the circuit court's order on the injunction and to find that the issue concerning the website is moot. Thank you. Counsel. Thank you again. To start off with, in terms, there was a standing argument that had just been made by IGB. My recollection is that's the first time that a standing argument has been made in oral arguments that has not been briefed. If the court was inclined, we would certainly have a response. If their standing argument was in writing, I could certainly respond to it. But as of right now, I don't believe that's an issue that's been presented to the court other than in oral arguments. There's a couple of things that really point to the sincerity of the IGB in what they're telling you. And the first thing is it's pretty clear from the record. If these people were Illinois State Police officers, and they have all the rules associated with Illinois State Police officers, where did these machines get taken? They didn't get taken to District 17 or District 7 or the evidence vaults in any of the Illinois State Police compounds, as far as I can tell. They were seized by the IGB. The IGB is the one that is seizing these machines. And as a result, it's pretty clear that these are IGB investigators. I think counsel mentioned that I was the one bringing up the term of investigators. Investigators is a definition as established by Illinois statute in section 79 of the Video Gaming Act. In fact, it's called investigators. Investigators appointed by the board, that is what they are under these appointments. They are investigators. I'm not saying that their investigators have to sit at a desk as was mentioned in the brief. Investigators is like detective. It's a designation. But the statute makes very, very clear what these investigators are supposed to do. And it also makes very clear these investigators are not supposed to be treated like every other police officer. They have to have their own badges. They have to have their own numbers. These investigators, when they're doing this work, have to act like investigators with the VGA. Otherwise, it's a slippery slope. Are they able to pull people over if they see machines in the back of their car? Are we going to give them lights and sirens? The VGA limits everything that they're allowed to do. And section 79 points to that. It's limited to offenses or violations occurring or committed in connection with the conduct subject to this act. Now, counsel also mentioned the Riverboat Gambling Act. And specifically, he mentioned section 20-7, which is an unusual and convoluted statute that's very difficult to understand. It's talking about Illinois State police officers. And it's also talking about Internal Revenue Department officers. What's interesting here is the section directly before that is 20-6. And that reads that the VGA has the power to appoint investigators to do investigations. And it eventually goes on to say committed on a riverboat or dock. So the section right before limits it to riverboat and dock. What's funny is when you talk about the VGA, Video Gaming Act, that actually doesn't refer to section 20.7 when you're talking about investigators. It refers to section 20.6, which severely limits the investigator's authority. And this idea that all of the provisions of the Riverboat Gambling Act are automatically brought into the VGA is not accurate. In fact, the statute says only those provisions which don't directly contradict the VGA are adopted. And here, we have a direct contradiction. Because the VGA specifically says in terms of seizing gambling devices, section 28-5 of the criminal code applies. And that says Illinois State police officers. Counsel has one minute. Thank you. I guess the final piece of the pie that tells us that there's some insincerity here is their own documents conflict with each other. They say that these things match the definition of a gambling device. And all you have to do is ego and you say, well, okay, what does it say about gambling devices? Oh, every gambling device found in licensed establishment may be confiscated pursuant to section 28-5 of the criminal code. So we just need to ignore the plain language of we think these are gambling devices and this rule applies. Because our investigators can happen to also be paid by the Illinois State Police. We have to separate the powers here. Otherwise, we don't know where the administrative agency ends and where the Illinois State Police start. It might seem like a fine line, but it's necessary to know if the proper action is being taken. And if the proper elected official is the one that's actually taking care of what they should be, namely the state's attorney's office. Because of that, on both issues, in regards to the publication, the trial report should be reversed. And if you want to remand or don't want to remand, in the end, it comes to the same result, which is that the Illinois Gaming Board exceeded their authority. And in regards to the officers, it's fairly clear that, I should say the investigators, it's fairly clear that the Illinois Gaming Board has exceeded its authority. It should call the Illinois State Police and they should be seized by the Illinois State Police if that's what they want to do. Thank you. If I could just address the website issue again briefly. It's important to note that the Circuit Court did not reach the issue on the merits about the statutory authority of the board to issue the LEPS document. There is a multi-page, single-spaced order on page 789 of the record, a single line. The court makes no findings as to the plaintiff's contentions that the IGB exceeded its statutory authority. The issue is not teed up for this court, and before that, it is moot. And as I said, there is no standing. I would just note on the issue of judicial notice, it's one thing to take judicial notice of a website. There's plenty of court authority on that in the age of the internet. It's quite another matter to take judicial notice of an affidavit, and counsel has not provided any legal authority for that in his brief. Turning now to the authority question, counsel says again that we should have called the state police. We did. We contracted with them. We hired with them. Those are the three officers who seized these kiosks. He made a point earlier that I didn't quite follow about local police being required to be part of a seizure. That's an option for us as a backup. It's not statutorily mandated. Of course, we will use local police when there's a situation that requires it. There's nothing in the statute that requires us to contact the Ottawa police or the North Police. There's no issue of badging here. I'm not quite sure what that amounts to. There's nothing in the record about badges. Maybe it has to do with local police. To the point that I think we're far beyond the narrow issues before the court, which involves what these state police could do under the statute. If, hypothetically, someone were driving away from a casino with a device in the backseat that was evidently not licensed and in plain view, they could have their lights flashing and the sirens on because they're state police. They could also pull someone over for speeding after they leave the casino. They can go into a gym or any other public or quasi-public place and enforce the gaming statutes because they were state police. They didn't stop being Illinois state police officers at any time. The counsel said something that I think misinterprets the way the statute works. Section 20.7 is the operative provision that allows us to contract with the state police. There is a provision in the VGA that imports the entirety of the appointment power and Section 20.6 into the VGA. The VGA imports the Riverboat Gambling Act. It doesn't just import one provision. It allows us to use state police. That's what they did. Their seizure was lawful. It was authorized. It was in accordance with the law. The circuit court's injunction is premised. There's nothing left for the basis for the injunction except the authority of these state police officers to do what they did. The legal question is not before the court. If the circuit court's injunction hinges in any way on this legal issue about the status of these kiosks as a category, the injunction must fail. There's no basis for that because the court didn't decide it. And so what the injunction is based on is the authority question. The state police officers had authority under these three provisions. Thank you. And the injunction must be dissolved because there's no basis for it. If there's no further questions, Your Honors, thank you. Thank you. Thank you all for your arguments here today in this case. And the court will take this matter under advisement. And we will adjourn for this term, the May term. And good-bye again in the future. Thank you. All rise. The court is standing adjourned.